IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-485-D

KENNETH HAMPTON, et al.,        )
                                )
                Plaintiffs,     )
                                )
        v.                      )               **ORDER**
                                )
KPM LLC, et al.,                )
                                )
                Defendants.     )

On July 20, 2018, Kenneth Hampton ("Hampton"), Gabrielle Harris ("Harris"), and Alisa

Brogden ("Brogden"; collectively, "plaintiffs"), on behalf of themselves and others similarly

situated, filed a complaint in Wake County Superior Court against KPM LLC ("KPM"), KPM

Carolinas LLC ("KPM Carolinas"), Kotarides Holdings, LLC ("Kotarides"), Hillandale North LLC,

2052 LLC, d/b/a Clairmont at Brier Creek ("Clairmont at Brier Creek"), and 1752 LLC, d/b/a

Clairmont at Perry Creek ("Clairmont at Perry Creek"; collectively, "defendants").[1] Plaintiffs allege

that defendants violated the North Carolina Residential Rental Agreements Act ("RRAA"), N.C.

Gen. Stat. § 42-38 et seq., the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §

75-50 et seq., and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.

Gen. Stat. § 75-1 et seq., [D.E. 1-3]. On October 12, 2018, defendants removed the action to this

court [D.E. 1]. On November 8, 2018, defendants answered and alleged counterclaims for breach

of contract [D.E. 21]. On January 22, 2019, defendants amended their answer [D.E. 30].

On March 5, 2019, plaintiffs moved to dismiss defendants' counterclaim for lack of subject-

_____

[1] On December 18, 2018, the parties voluntarily dismissed KPM Carolinas and Kotarides
[D.E. 25].

matter jurisdiction [D.E. 38] and filed a memorandum in support [D.E. 39]. On March 26, 2019, defendants responded in opposition [D.E. 44]. On April 23, 2019, plaintiffs replied [D.E. 52]. On March 25, 2019, defendants moved for judgment on the pleadings [D.E. 40] and filed a memorandum in support [D.E. 41]. On May 15, 2019, plaintiffs responded in opposition [D.E. 55]. On June 19, 2019, defendants replied [D.E. 58]. On March 25, 2019, Hampton moved for judgment on the pleadings [D.E. 42] and filed a memorandum in support [D.E. 43]. On May 14, 2019, defendants responded in opposition [D.E. 53]. On June 18, 2019, plaintiffs replied [D.E. 57]. As explained below, the court denies Hampton's motion for judgment on the pleadings, grants defendants' motion for judgment on the pleadings, denies as moot plaintiffs' motion to dismiss defendants' counterclaims, and dismisses plaintiffs' complaint.

I.

Plaintiffs are former tenants who leased apartments at Clairmont at Brier Creek from defendants. See Compl. [D.E. 1-3] ¶¶ 8–10, 27, 54, 75, 94. Hampton leased an apartment from May 25, 2016, until May 24, 2017, and paid a monthly rent of $1,010.00. See id. ¶¶ 54, 56. Harris leased an apartment from April 18, 2016, until April 17, 2017, and also paid a monthly rent of $1,010.00. See id. ¶¶ 75, 77. Brogden leased an apartment from February 21, 2017, until February 20, 2019, and paid a monthly rent of $1,225.00. See id. ¶¶ 94, 97.

Under plaintiffs' leases, rent was due on the first day of each month. See, e.g., Pl.'s Ex. 1 [D.E. 1-3] 34; cf. Compl. [D.E. 1-3] ¶ 27. Failure to pay rent on time constituted a default. See, e.g., Pl.'s Ex. 1 [D.E. 1-3] 41–42 ¶ 38. If a tenant defaulted, the leases authorized defendants to file a summary ejectment complaint in state court. See id. If defendants did so, plaintiffs agreed in the leases to pay the highest of three fees depending on how far legal action against plaintiffs progressed: a complaint filing fee, a court appearance fee, or a second trial fee. See id.; cf. N.C. Gen. Stat. § 42-

46(e)–(g). In addition, plaintiffs agreed to pay "court costs, attorneys' fees, and any other monetary damages or costs arising" from the breach of the lease. Pl.'s Ex. 1 [D.E. 1-3] 41–42 ¶ 38.

Plaintiffs allege that defendants follow a regular procedure if a tenant fails to timely pay rent. See Compl. [D.E. 1-3] ¶ 31. First, on approximately the fifth day of the month, defendants cause written letters or emails to be delivered to the tenant stating that the tenant "will also be charged for court costs" if the tenant fails to cure the default. Id. ¶ 36; see Pl.'s Ex. 3 [D.E. 1-3] 44. Next, on approximately the fourteenth day of the month, defendants charge the tenant "eviction fees," sometimes without a court order and before filing a complaint against the tenant, and file a legal action to evict the tenant. Compl. [D.E. 1-3] ¶¶ 44–45.[2] The "eviction fees" are the court filing fees ($96.00), sheriff service fees ($30.00), and attorneys' fees (a flat fee). See id. ¶¶ 30–35. These fees are allegedly "additional fees separate and apart from the ones expressly authorized by" section 42-46 of the RRAA. Id. ¶ 32. Once defendants entered the "eviction fees" onto a tenant's account, plaintiffs allege that defendants would not review or remove the fees even if defendants improperly assessed the fees or a summary ejectment action was dismissed. See id. ¶¶ 52–53.

Plaintiffs repeatedly did not pay rent on time. Specifically, Hampton did not pay rent on time for eleven consecutive months. See Compl. [D.E. 1-3] ¶ 59. Harris did not pay rent on time for ten consecutive months. See id. ¶ 78. Brogden also did not pay rent on time on several occasions. See id. ¶ 98. Defendants then sent plaintiffs letters stating that plaintiffs would owe applicable court and attorneys' fees if defendants initiated summary ejectment proceedings. See id. ¶¶ 59, 78, 98. On several occasions, plaintiffs failed to cure their default and defendants placed the "eviction fees" on

---

[2] Plaintiffs' allegation that these costs were "fees" is a legal conclusion. Thus, the court need not accept as true that these amounts constituted "fees" under the RRAA. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007).

3

plaintiffs' accounts. See id. ¶¶ 63, 82, 102. In each instance, the "eviction fees" amounted to $201.
See id. ¶¶ 63, 82, 102.

Plaintiffs allege that, when defendants added eviction fees to plaintiffs' accounts, no hearing
had been held, no attorney had appeared in court to evict plaintiffs, defendants had not hired an
attorney to collect any debt, and defendants had not served plaintiffs with a complaint. See id. ¶¶
66–68, 85–87, 105–07. For each instance of default, plaintiffs cured their defaults by paying rent
and the "eviction fees," and defendants voluntarily dismissed their summary ejectment complaints
without prejudice. See id. ¶¶ 71–72, 90–91, 110–11. Plaintiffs allege that no court awarded fees to
defendants and that plaintiffs did not settle with defendants. See id. ¶¶ 73–74, 92–93, 112–13.

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings
"[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A
motion for judgment on the pleadings should be granted if "the moving party has clearly established
that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter
of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006)
(quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F.
App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing,
Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d
401, 405–06 (4th Cir. 2002).

The same standard applies to a motion for judgment on the pleadings as to a motion to
dismiss for failure to state a claim. See Burbach Broad. Co., 278 F.3d at 405–06. When a court
evaluates a motion for judgment on the pleadings, it must construe the facts and reasonable
inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343,

347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d

549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218

(2015); Burbach Broad. Co., 278 F.3d at 406. A court must determine whether a pleading is legally

and factually sufficient. See Iqbal, 556 U.S. at 677–80, 684; Twombly, 550 U.S. at 554–70;

Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A pleading "must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S.

at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover,

a court need not accept a pleading's legal conclusions drawn from the facts. Iqbal, 556 U.S. at

678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted

inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation

omitted).

In evaluating a motion for judgment on the pleadings, the court may consider the pleadings

and any materials referenced in or attached to the pleadings, which are incorporated by reference.

See Fed. R. Civ. P. 10(c); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th

Cir. 1991). A court also may consider "matters of which a court may take judicial notice," such as

public records. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In addition,

a court may consider documents attached to a motion for judgment on the pleadings so long as those

documents are "integral to the complaint" and authentic. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d

176, 180 (4th Cir. 2009); see Rockville Cars, LLC v. City of Rockville, Md., 891 F.3d 141, 145 (4th

Cir. 2018).

The parties' motions require the court to consider the plaintiffs' state law claims, and North

Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina

would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt

Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; see also Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

Plaintiffs allege that defendants violated the RRAA by charging plaintiffs court costs and other out-of-pocket expenses as "eviction fees" when plaintiffs did not pay rent on time. See Compl. [D.E. 1-3] ¶¶ 124–29; cf. N.C. Gen. Stat. § 42-46(h)(3). On June 14, 2018, the North Carolina General Assembly ("General Assembly") amended section 42-46(h)(3) of the RRAA. See An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases, 2018 N.C. Sess. Laws 2018-50 (2018). On June 25, 2018, the amendment became effective. See id. The parties dispute the effect of the 2018 amendment on plaintiffs' claims.

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

"In construing a state law, [federal courts] look to the rules of construction applied by the enacting state's highest court." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); see In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009). Accordingly, this court applies the Supreme Court of North Carolina's rules of statutory interpretation.

Under North Carolina law, "[t]he cardinal principle of statutory construction is to discern the intent of the legislature." State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 498 (2005); see Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 402, 735 S.E.2d 229, 234 (2012). Courts initially consider a statute's text to discern legislative intent. See Shaw v. U.S. Airways, Inc., 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); State v. Anthony, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). North Carolina courts "first look to the plain meaning of the statute." Frye Reg'l Med. Ctr., Inc. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). "Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ." Id.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either . . . to change the substance of the original act, or . . . to clarify [its meaning]." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968); see Spruill v. Lake Phelps Volunteer Fire Dep't, Inc., 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000). A clarifying amendment does not alter the original meaning of the statute and, thus, applies retroactively. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012); Wilson v. N.C. Dep't of Commerce, 239 N.C. App. 456, 461, 768 S.E.2d 360, 364 (2015); Thornton v. City of Raleigh, 230 N.C. App. 600, 753 S.E.2d 400, 2013 WL 6096919, at *2 (2013) (unpublished table decision). By contrast, an altering amendment modifies a statute's substantive meaning and only applies prospectively. Cf. Ray, 366 N.C. at 9, 727 S.E.2d at 681.

Whether an amendment is altering or clarifying is a question of law for the court. See id. at 8–9, 727 S.E.2d at 681; In re Ernst & Young, LLP, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). The Supreme Court of North Carolina presumes that the legislature intended to change the law when it amends a statute. See State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84; State v. Moore, 240 N.C. App. 465, 477, 770 S.E.2d 131, 140 (2015). Nevertheless, if the amendment serves to address an ambiguity or improve the language of a statute, a court may interpret the amendment as merely clarifying existing law. See Ridge Cmty. Invs., Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84.

A court must undertake a "careful comparison of the original and amended statutes" to "determine whether [an] amendment clarifies [a] prior law or alters it." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993); see Ray, 366 N.C. at 10, 727 S.E.2d at 682. Courts can use amendments to interpret a statute by analyzing "the natural inferences arising out of the legislative history as it continues to evolve." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990). If a statute does not expressly address a particular point, and a legislature enacts an amendment to address that point, the amendment is more likely to be clarifying than altering. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Jeffries v. Cty. of Harnett, 817 S.E.2d 36, 48 (N.C. Ct. App. 2018); see also Bryant v. United States, 768 F.3d 1378, 1385 (11th Cir. 2014) (applying North Carolina law). On the other hand, "an amendment to an unambiguous statute indicates the intent to change the law." Childers, 274 N.C. at 260, 162 S.E.2d at 484; see Taylor v. Crisp, 286 N.C. 488, 497, 212 S.E.2d 381, 386–87 (1975); see also Bryant, 768 F.3d at 1385.

Before the General Assembly amended section 42-46 in 2018, the RRAA did not allow a

8

landlord to "put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2016). Sections 42-46(e), (f), and (g) authorize a landlord to charge a tenant a complaint-filing fee, a court-appearance fee, or a second trial fee depending on how far legal action against the tenant progresses. See id. § 42-46(e)–(g). The 2018 amendment to section 42-46(h)(3) explicitly authorizes landlords to charge defaulting tenants "out-of-pocket expenses." See id. § 42-46(h)(3), (i) (2018). Specifically, the RRAA, as amended, permits landlords to charge defaulting tenants "[f]iling fees charged by the court," "[c]osts for service of process pursuant to" North Carolina law, and "[r]easonable attorneys' fees actually incurred." Id. § 42-46(i)(1)–(3).

Before the amendment, section 42-46(h)(3)'s text did not expressly state whether a "fee" included actual court costs and other damages arising from breach of a lease. The amendment to section 42-46 unequivocally authorizes landlords to charge defaulting tenants for such costs. Because the amendment provided express guidance concerning an issue on which the statute was silent, this court predicts that the Supreme Court of North Carolina would interpret the amendment as clarifying. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Suarez v. Camden Prop. Tr., No. 5:17-CV-124-D, 2019 WL 1301951, at *4 (E.D.N.C. Mar. 21, 2019) (unpublished), appeal docketed, No. 19-1367 (4th Cir. 2019). Moreover, section 42-46(i) distinguishes the "out-of-pocket expenses" authorized by section 42-46(i) from the "late fees" governed by sections 42-46(a) and 42-46(b) and the "administrative fees" governed by sections 42-46(e)–(g). See N.C. Gen. Stat. § 42-46(i). This distinction suggests that a "fee," before the amendment, did not include actual out-of-pocket expenses. Thus, a comparison of the statute's text before and after amendment indicates that the amendment was clarifying.

Notably, the General Assembly enacted the amendment in response to a Wake County Superior Court decision that read section 42-46(h)(3) broadly. See Compl. [D.E. 1-3] ¶ 32 n.1; Pl.'s Ex. 10 [D.E. 1-3] 72–73. These circumstances bolster the conclusion that the General Assembly's legislative intent was to clarify an ambiguity in section 42-46. See, e.g., Thomas v. Barnhill, 102 N.C. App. 551, 553–54, 403 S.E.2d 102, 103–04 (1991); cf. State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc., 270 N.C. 323, 331, 154 S.E.2d 548, 555 (1967) (stating that "the circumstances surrounding [the] adoption" of a statute can demonstrate legislative intent). Moreover, the 2018 amendment's original (albeit removed) preamble stated that the General Assembly intended to "reaffirm" that landlords could charge defaulting tenants out-of-pocket expenses. See Ex. 4 [D.E. 43-4]. Finally, the 2018 amendment's original version expressly did not have retroactive effect, but the General Assembly changed that provision in the amendment's final version. See id. Thus, the 2018 amendment's legislative history confirms that the General Assembly's legislative intent was to clarify the RRAA's application to court costs and out-of-pocket expenses.[4]

Because the amendment is clarifying, it applies to this action. See Ray, 366 N.C. at 9, 727 S.E.2d at 681; Wells v. Consol. Judicial Ret. Sys. of N.C., 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); Ferrell, 334 N.C. at 661–62, 435 S.E.2d at 317; Childers, 274 N.C. at 260, 162 S.E.2d at 483–84. Accordingly, section 42-46(h)(3) at all times permitted defendants to charge plaintiffs for out-of-pocket expenses (i.e., what plaintiffs allege are "eviction fees"). Moreover, defendants could

---

[4] Plaintiffs argue that the General Assembly's rejection of language in the original draft stating that the legislature aimed to "reaffirm" landlords' ability to charge out-of-pocket expenses supports their interpretation. Legislative history, however, is "often murky, ambiguous, and contradictory." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005). Thus, even assuming that one can infer from the General Assembly's rejection of the original preamble that it intended to alter the law, this negative inference alone does not outweigh the other evidence that the General Assembly intended only to clarify the RRAA.

charge reasonable attorneys' fees. See Suarez, 2019 WL 1301951, at *4–5. Because North Carolina law did not and does not forbid landlords to charge defaulting tenants out-of-pocket expenses and attorneys' fees arising from their defaults, the court grants defendants' motion for judgment on the pleadings on plaintiffs' RRAA claim, denies Hampton's motion for judgment on the pleadings on plaintiffs' RRAA claim, and dismisses plaintiffs' RRAA claim.

## B.

As for plaintiffs' NCDCA and UDTPA claims, see Compl. [D.E. 1-3] ¶¶ 130–56, to state a NCDCA or UDTPA claim, plaintiffs must plausibly allege that defendants committed an unfair or deceptive act. See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000); Suarez, 2019 WL 1301951, at *5–6. Because the RRAA does not and did not forbid defendants' actions, plaintiffs do not plausibly allege an unfair or deceptive act. See, e.g., Suarez, 2019 WL 1301951, at *5–6. Accordingly, the court grants defendants' motion for judgment on the pleadings on plaintiffs' NCDCA and UDTPA claims, denies Hampton's motion for judgment on the pleadings on plaintiffs' NCDCA and UDTPA claims, and dismisses plaintiffs' NCDCA and UDTPA claims.

## III.

KPM and Clairmont at Brier Creek allege that Brogden breached her lease by failing to pay rent, failing to vacate the apartment unit, failing to pay other charges due under the lease, and failing to pay her final balance due. See Am. Ans. [D.E. 30] 22 ¶ 5. KPM and Clairmont at Brier Creek also allege a conditional breach of contract counterclaim against any future class members who may have breached their leases similarly to Brogden. See id. ¶¶ 9–13. Plaintiffs move to dismiss the counterclaims for lack of subject-matter and personal jurisdiction.

The court has dismissed all claims over which it had original jurisdiction. Thus, even assuming without deciding that the counterclaims are compulsory and that the court could exercise supplemental jurisdiction, the court declines to do so. See 28 U.S.C. § 1367(c)(3); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639–40 (2009); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 551 (4th Cir. 2001); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616–17 (4th Cir. 2001); O'Fay v. Sessoms & Rogers, P.A., No. 5:08-CV-615-D, 2010 WL 9478988, at *6 (E.D.N.C. Feb. 9, 2010) (unpublished). Accordingly, the court dismisses without prejudice KPM and Clairmont at Brier Creek's counterclaims, and denies as moot plaintiffs' motion to dismiss the counterclaims for lack of subject-matter and personal jurisdiction.

IV.

In sum, the court GRANTS defendants' motion for judgment on the pleadings [D.E. 40], DENIES plaintiffs' motion for partial judgment on the pleadings [D.E. 42], DECLINES to exercise supplemental jurisdiction over defendants' counterclaims [D.E. 30], DENIES as moot plaintiffs' motion to dismiss for lack of jurisdiction [D.E. 38], DISMISSES WITHOUT PREJUDICE defendants' counterclaims [D.E. 30], and DISMISSES plaintiffs' complaint [D.E. 1-3]. The clerk shall close the case.

SO ORDERED. This 30 day of October 2019.

James C. Dever III
JAMES C. DEVER III
United States District Judge

12